IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LINCOLN GENERAL INSURANCE
COMPANY,

        Plaintiff,                       No. CIV S-07-0740 FCD DAD

    v.

AWC CARRIERS, INC.,              ORDER AND

        Defendant.                 FINDINGS AND RECOMMENDATIONS

_____/

        This matter came before the court on October 5, 2007, for hearing on plaintiff's application for default judgment by the court. Brian P. Worthington, Esq. appeared on behalf of plaintiff. There was no appearance on behalf of defendant. The court directed counsel to file a supplemental declaration concerning defendant's designated agent for service. Plaintiff's application for default judgment was taken under submission.

        Plaintiff's counsel filed a supplemental declaration on October 8, 2007. After hearing oral argument, and having considered all written materials submitted in connection with plaintiff's application for default judgment, for the reasons set forth below, the undersigned recommends that plaintiff's application for default judgment be granted.

/////

/////

1

FACTUAL BACKGROUND[1]

Plaintiff Lincoln General Insurance Company ("Lincoln") is an insurance company that is incorporated and has its principal place of business in the State of Pennsylvania. Defendant AWC Carriers, Inc. ("AWC") is a corporation that is incorporated and has its principal place of business in the State of Alabama. AWC operates a trucking business.

Whitestone Management Group, LLC ("Whitestone") is a California corporation that has its principal place of business in Stockton, California. Whitestone is an insurance broker authorized under specified circumstances to issue insurance policies on behalf of Lincoln. Whitestone issued a Lincoln commercial lines policy to AWC. The policy was intended to be effective for one year, from January 27, 2006, to January 27, 2007.

Included among the types of coverages provided by the policy are Auto Liability Coverage (including Uninsured Motorist Coverage), Motor Truck Cargo Coverage, and Physical Damage Specified Causes of Loss and Collision Coverage. AWC's monthly premiums for these coverages were to be calculated, as to the auto liability and motor truck cargo coverages, on the basis of miles operated per month and, as to the physical damage for specified causes of loss and collision coverage, on the basis of a monthly listing of total insured value. For purposes of computing AWC's monthly premiums for these coverages, the policy required AWC to provide monthly reports regarding vehicles in operation and miles driven during the report month. The policy provided Lincoln with the right to conduct an audit of miles driven. AWC was required to deposit the sum of $258,938 in escrow against the premiums to be calculated on the basis of its monthly reports.

AWC failed to make the required escrow deposit and failed to pay any of the monthly premiums required under the parties' agreement. Lincoln canceled the policy effective

---

[1] Pl.'s Complaint at 1-4 & Ex. 1; Application for Default J. filed Aug. 31, 2007, at 1-2, Mem. of P. & A. at 1-7, Decl. of Wanda Wagner, Decl. of Brian P. Worthington; Second Decl. of Brian P. Worthington filed Oct. 8, 2007.

May 5, 2006. Whitestone, acting on Lincoln's behalf, sought to recover the unpaid premiums from AWC. In order to calculate the unpaid premiums, Lincoln asked to conduct an audit of the mileage driven by vehicles operated by AWC during the period of January 27, 2006, to May 5, 2006. AWC refused to allow Lincoln to conduct an audit and refused to cooperate with Lincoln in any way.

In the absence of either monthly reports or audit findings, Whitestone calculated AWC's unpaid premium by pro-rating the estimated annual mileage in the manner authorized by California Insurance Code § 481.5. Whitestone started with 17,000,000 as the estimated annual mileage for 2006-2007. The estimated annual mileage was provided by AWC at the inception of the policy. On the basis of the estimated annual mileage, Whitestone calculated AWC's annual premium to be $1,048,279, which was the estimated premium the parties had also agreed to at the inception of the policy. Whitestone multiplied the estimated annual premium by a pro-rata factor of .7315065, yielding $766, 823 as the amount of the estimated annual premium that would have been returnable to AWC if the entire premium had been paid in advance. Subtracting $766,823 from the annual premium of $1,048,279 leaves $281,456 as the amount payable by AWC for the period of January 27, 2006, to May 5, 2006. Whitestone demanded the unpaid premium of $281,456 from AWC. Despite repeated requests for payment, AWC failed to pay any part of the unpaid premium.

On April 18, 2007, Lincoln initiated this action seeking damages for AWC's breach of contract and restitution for unjust enrichment. On May 7, 2007, Lincoln served the complaint on David Parsons, registered agent for AWC. Despite being served with process, AWC failed to respond to plaintiff's complaint, failed to make any contact with Lincoln or Lincoln's counsel, and failed to appear in this action. The Clerk of the Court entered the default of defendant AWC on June 8, 2007, pursuant to plaintiff Lincoln's request filed on that date. Plaintiff then filed its application for default judgment by the court. The application is supported by the declaration of plaintiff's counsel and the declaration of Wanda Wagner, the Whitestone

underwriter who calculated AWC's earned and unearned premiums.  After the hearing of plaintiff's application for default judgment, plaintiff's counsel filed a supplemental declaration confirming the name and address of defendant's registered agent for service.[2]

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for entry of default judgment.  Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944), and Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).  Where damages are liquidated (i.e., capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits), judgment by default may be entered without a damages hearing.  See Dundee, 722 F.2d at 1323.  Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion, see Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986), and the court is free to consider a variety of factors in exercising that discretion, see Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The court may consider such factors as:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

---

[2] Plaintiff's request for entry of default, the clerk's entry of default, and plaintiff's application for default judgment have not been served on defendant.

ANALYSIS

The detailed allegations of plaintiff's complaint demonstrate that plaintiff and defendant entered into the agreement described in the complaint, that defendant breached the agreement, and that defendant was unjustly enriched by enjoying the benefit of insured status until the policy was canceled by plaintiff.  The detailed allegations of the complaint also demonstrate that defendant prevented plaintiff from auditing the actual mileage of defendant's vehicles and calculating the unpaid premium agreed upon in the insurance policy.  By failing to respond to plaintiff's complaint, defendant has also prevented plaintiff from conducting the discovery that would have enabled plaintiff to determine the exact amount of defendant's unpaid premium.

The record reflects that the summons and complaint were served on defendant's registered agent on May 7, 2007, by personal service.  Defendant has failed to answer or otherwise appear in this action.  The Clerk entered defendant's default on June 8, 2007, and plaintiff now seeks entry of default judgment, requesting only the unpaid premium of $281,456, which has been computed in accordance with California law for the period of time prior to the cancellation of defendant's insurance policy.

The undersigned finds that the complaint is sufficient, and the amount of money at stake is relatively small, particularly because plaintiff seeks only the pro-rated amount of the unpaid premiums for the period of time that defendant's policy was in effect and because plaintiff has relied on defendant's own estimated annual mileage in lieu of the actual mileage that defendant refused to provide or permit plaintiff to discover.  Plaintiff will be prejudiced if default judgment is denied because plaintiff will be without other recourse for recovery.  In light of the Clerk's entry of default against defendant, there is no apparent possibility of a dispute concerning the material facts underlying the action.  There is no indication that defendant's default resulted from excusable neglect, in light of plaintiff's efforts to notify defendant of its complaint and its intent to pursue unpaid premium amounts in the sum of not less than $281,456.

Although public policy generally favors the resolution of a case on its merits, defendant's failure to appear and defend itself against plaintiff's claims makes a decision on the merits impossible in this case. Because the relevant factors weigh in plaintiff's favor, the undersigned, while recognizing the public policy favoring decisions on the merits, will recommend that default judgment be granted against defendant. The undersigned will further recommend that plaintiff be awarded damages in the sum of $281,456.

IT IS HEREBY ORDERED that plaintiff shall serve a copy of this order and findings and recommendations together with a copy of plaintiff's application for default judgment and all supporting documents on defendant and file a proof of such service with the court within five days after the filing of this order and findings and recommendations; and

IT IS RECOMMENDED that:

1. Plaintiff's August 31, 2007 application for default judgment be granted; and

2. Judgment be entered for plaintiff in the amount of $281,456.

The findings and recommendations set forth above are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **thirty (30)** days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be served and filed within **ten (10)** days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 9, 2007.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
DDad1\orders.civil\lincolngeneral0740.mdj.f&r